WALLACE *v.* STATE.

(In Banc.   June 14, 1948.)

[35 So. (2d) 703.   No. 36851.]

Cohn & Hobbs, of Brookhaven, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

Argued orally by **A. A. Cohn**, for appellant, and by **R. O. Arrington**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellent was indicted for the murder of J. C. Wallace; was convicted of manslaughter and sentenced to the state penitentiary for fifteen years. He appeals.

The court admitted in evidence X-ray pictures showing the course of the bullet through, and the place of its lodgment in, the head of the deceased. Appellant says that was reversible error because it was not shown, with sufficient certainty, the pictures were accurately made,

nor that Dr. Frank Lea Butler, who explained them to the jury, had the required skill and knowledge to interpret them. The evidence on these questions is that the victim was taken to the McComb City Hospital, McComb, Mississippi, immediately after being shot in the head with a pistol by appelllant; that the injured man lived only a short time, and that after his death the X-ray pictures in question were taken; that these were made with the machine and instruments used in that hospital for that purpose, and were preserved as a record of the hospital; that they were taken by Dr. T. L. Moore, assisted by Dr. Frank Lea Butler, both professionally connected with the hospital. In addition to the foregoing facts, it is shown that Dr. Butler graduated at the University of Tennessee Medical College in 1939; that later he served an internship at Grace Hospital, Detroit, Michigan. He then practiced medicine in the Marine Corps for three and a half years, and has engaged in the general practice of medicine since 1941. He said he had never taken a technical course of study directed particularly to making or reading X-ray pictures, but he had studied both subjects as a part of his medical course, and his practical experience therein, both as a student and in the practice of medicine, had been extensive. He said the pictures in question were accurately taken and interpreted. There was no evidence intimating the contrary. The trial judge heard the foregoing evidence preliminary to its admission before the jury. He held that the pictures were competent and that the learning and experience of Dr. Butler qualified him to interpret them. We think he was correct in both respects. "The process of X-ray photography is now well established as a method of securing a reliable representation of the bones of the human body, the location of growths and foreign substance in the body . . . '' 20 Am. Jur., p. 614, Sec. 736. They are admissible "on authentication which satisfies court that thing or person is fairly portrayed, and question of competency of X-ray pictures is a preliminary

one, addressed to sound discretion of the court." Gulf Research Development Co. v. Linder, 177 Miss. 123, 170 So. 646; Howell v. George, 201 Miss. 783, 30 So.(2d) 603; 20 Am. Jur., p. 609, Sec. 730. We cannot say the trial court erred in admitting these pictures in evidence.

As to the qualifications of Dr. Butler to interpret the pictures, this question is also one normally addressed to the sound discretion of the trial judge. "Any person who has, by sufficient experience, acquired adequate knowledge of X-rays and their interpretation may qualify as a witness." 20 Am. Jur., p. 692, Sec. 822. It is a general rule that for one to testify as an expert it is not necessary that he be infallible or possess the highest degree of skill. It is sufficient if he possesses peculiar knowledge, wisdom, or information regarding the subject matter, acquired by study, investigation, observation, experience or practice, not possessed by the ordinary layman or inexperienced person. King v. King, 161 Miss. 51, 134 So. 827. It is evident, we think, from the foregoing evidence that Dr. Butler was well qualified to interpret these pictures, especially when considered in connection with the record admission of appellant, when Dr. Butler was offered as a witness, that he was qualified in the general practice of medicine.

There are two other reasons why the admission of these pictures and their interpretation was not error in this case. The first is that, although the pictures are not with the record and we have not seen them, we gather they plainly show the entrance, course of lodgment of this bullet. They needed no interpretation. They were before the jury and the jurors themselves could discern the foregoing facts therefrom. The other reason is there was no dispute about these matters and the entrance and of course of the bullet could have resulted at naturally from the relative positions of the parties as claimed by appellant as from such positions as contended for by the state.

It is next urged that error was committed in the method used by the district attorney in examining certain rebuttal witnesses. Shortly after the homicide occurred the district attorney, accompanied by these witnesses, went to the home of appellant, which was the scene of the crime. There and then the district attorney, in the presence of the rebuttal witnesses, asked Mrs. Lulu Wallace, the wife, and Versie Wallace, the son of appellant, certain questions and they made answers thereto, descriptive of the respective actions of appellant and J. C. Wallace, and the location and movements of an automobile occupied by J. C. Wallace when he was shot. The version of Mrs. Wallace and Versie given on the stand varied materially, according to the contention of the state, from that given by them at the scene. The district attorney laid the proper predicate for rebuttal evidence. The following are samples of questions he asked the rebuttal witnesses to which objection was made:

"Q. Now, Mr. Ellison, I will ask you to tell the court and the jury if you remember the questions asked her (Mrs. Wallace) and the answers given with reference to this shooting, at that time? A. Mrs. Wallace was asked where they were at the time this pickup came up and they said they were having breakfast and the pickup came up. She said it blew the horn and Mr. Wallace got up and went outside. She was asked how long he was outside before the shooting occurred. She said 4 or 5 minutes."

This witness was also asked, "Q. I will ask you if you remember to tell the court and jury what questions was asked Versie Wallace with reference to this shooting and with reference to the truck and what his answers were?" The witness then gave his recollection of the questions and answers.

One objection is to the form of the questions. The questions might have been more specific. The rebuttal witnesses, more properly, could have been asked if the defense witnesses did or did not, on the occasion in ques-

tion, make stated assertions. But the objection reaches only form. And, while some of the questions were general, as shown above, others were in detail, as, for example, "Where did she say she went?"; "Where did she say she was at the time of the shooting?", and other specific questions which could be set out.

Appellant makes the further contention that the general answers given by the rebuttal witnesses did not contradict what Mrs. Wallace and Versie testified on the stand they did, or did not, say at the scene. We cannot see how that is reversible error. If the answers did contradict the defense witnesses, they met the purpose for which they were offered; if they supported the assertions of defense witnesses, the accused was benefitted —at least he could not complain. We do not think either contention as to this rebuttal evidence is well taken.

Appellant next says the rule was invoked and that the rebuttal witnesses heard, or could have heard, the testimony of some of the defense witnesses, and for that reason the rebuttal witnesses should not have been permitted to testify. The court conducted a preliminary examination before admitting the testimony. It appears these witnesses did not remain in the witness room; that some of them were about, or near, entrances to the court room. However, they all testified they never heard a word of evidence given on the stand by any witness, and the trial judge found "They have heard none of the testimony and not violated the rule of the court."

This is a matter largely within the discretion of the trial judge. Thomas v. State, 103 Miss. 800, 60 So. 781. We find no error here.

Affirmed.