386 So.2d 718 (1980)
Tommy NEAL
v.
STATE of Mississippi.
No. 52019.
Supreme Court of Mississippi.
August 6, 1980.
*719 Dulaney & Dulaney, J.W. Dulaney, Jr., Tunica, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
BROOM, Justice, for the Court.
Manslaughter is the offense for which Tommy Neal (defendant/appellant) was convicted at his trial in the Circuit Court of Tunica County upon a murder indictment. Neal was sentenced to twenty years imprisonment. On his appeal, he argues: (1) the cause of death was not sufficiently proven; (2) incriminating statements made by him were admitted into evidence contrary to his Miranda rights; and (3) other evidentiary questions were in issue. We affirm.
Gambling, participation in a crap game at the Whitestone Cafe in Tunica, marked the defendant's activities prior to his shooting the deceased Ananias "Shorty" Harris. Eyewitnesses testified as to the fact that Neal shot Harris from a distance of approximately fifteen feet. According to Neal, Harris was "cussing" and intimidating him, after which Neal left the Whitestone and went to another place where there were gambling activities. During this interval, Neal went to his home, got his pistol and returned to the Whitestone Cafe. Neal testified that Harris again cursed him and "got after" him. He related that other people nearby "squalled" and began running, at which time he saw Harris behind him with something in his hand. At that time, Neal stated that he pulled his pistol from his pocket and shot Harris, as Harris uttered to him the following threat: "... I'll bust your head, shoot you, or something."
After the shooting, Neal went to the sheriff's office where he was first seen by Johnny Boyd, the dispatcher-radio operator, a civilian employee of the office. Apparently, no one was in the sheriff's office except Boyd and Neal. According to Boyd, Neal walked in with a pistol in his hand which Boyd told him to place on the counter. After putting the pistol on the counter, Neal voluntarily told Boyd that he had shot a man. Neal then "volunteered" certain inculpatory statements which he argues were inadmissible under the Miranda rule. Other facts will be set forth where appropriate in this opinion.
The first issue is whether the cause of death was adequately proven by competent evidence. Embalmer-funeral director Crawford, over defense objections that Crawford was not qualified to testify as to the cause of death, gave the only testimony relating to the cause of death. Crawford had been a practicing embalmer for many years and in other cases had testified as to the cause of death.
After the affray, Harris was taken first to the Tunica Hospital and later transferred to a hospital in Memphis. Harris was dead on arrival at the hospital in Memphis, or shortly thereafter. None of the attending physicians who attempted to treat Harris for the gunshot wound were called to testify, and no certified copy of the death certificate was introduced below. We point out that in this type of case, prosecutors should introduce into evidence medical (doctor's) testimony, if any available, as to the cause of death, along with the official certificate of death. Absent such testimony, some reason or explanation should be given which was not done here.
Neal cites Thompson v. State, 220 Miss. 200, 70 So. 341 (1954), as holding that a certified death certificate is admissible in criminal cases as prima facie evidence of the physical cause of death. In this regard, we have repeatedly held that it is the burden of the prosecution to establish the corpus *720 delicti: that the deceased is in fact dead, and that death resulted from a criminal agency. Of course, our rule is that whether a witness may speak as an expert is a question addressed largely to the trial court's sound judicial discretion. In the instant case, embalmer Crawford gave testimony outside the presence of the jury that he assumed (but did not positively know) that Harris died from the gunshot wound. In the jury's presence, Crawford testified he discovered on the body of Ananias one wound which was a gunshot wound in the lower part of the chest cavity. Crawford's opinion, which went to the jury, was that the cause of death was the gunshot wound, and there was no evidence to the contrary. It is well established in this jurisdiction that proof of the cause of death in homicide cases may be by lay testimony. McCraw v. State, 260 So.2d 457 (Miss. 1972); King v. State, 251 Miss. 161, 168 So.2d 637 (1964). Upon this record we are unwilling to rule that the lower court erred in allowing Crawford to give his opinion as to the cause of Harris' death.
The next issue is whether inculpatory oral statements made by Neal to Officer Boyd in the sheriff's office were erroneously admitted into evidence. Prior to the trial there was a hearing on a motion to suppress testimony as to any statements Neal made to Boyd or any bona fide police officers of the Tunica City Police Department or Tunica County Sheriff's Department. The lower court held that, as to any statements Neal made to the bona fide officers of the police and sheriff's department, the motion was sustained. However, he allowed Boyd, the radio dispatcher, to testify as to statements Neal made in Boyd's presence. The record shows that Neal voluntarily went to the sheriff's office and complied with Boyd's request that he put the pistol on the counter. At this time Boyd had no knowledge of the shooting, and Neal voluntarily told him that he (Neal) had shot a man. Boyd then asked Neal where the shooting occurred and Neal replied, "at the Whitestone Cafe." Of course, Boyd acted properly in propounding the tactical question as to where the shooting occurred  he needed to know where to dispatch law officers to investigate what Neal reported to him. Boyd testified that Neal told him that he "shot him in the abdomen" after an argument because the man had a bottle in his hand and kept threatening him. Then Boyd stated that Neal told him he had told the man to wait and that he (Neal) "went home and got my gun." During this entire exchange, Boyd was the only officer present, but shortly thereafter, other law officers arrived and radio dispatcher Boyd turned the matter over to them.
Neal argues that his statements to Boyd were inadmissible because Boyd failed to give him warnings about his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Our view is that what Neal stated to Boyd was voluntary and spontaneous, and therefore admissible, even though Boyd did not advise him of his Miranda rights. Nevels v. State, 216 So.2d 529 (Miss. 1968).
The next proposition argued is the contention that the lower court erred in permitting the prosecution to question its own witnesses as to the size of Harris, the defendant's victim. Testimony during the trial established that Ananias Harris was only about four and one-half to five feet tall. Neal contends that this evidence was prejudicial to him. We find no reversible error in this regard and point out that Neal may have benefitted from the testimony concerning Harris' size because it showed the reason he appeared to be afraid of Harris was because of the threat presented to him in view of the fact that Harris had a bottle or something in his hand. There is no reversible error in this aspect of the case in which no fair-minded juror could have returned any verdict other than that of "guilty."
Upon excellent briefs and oral argument, we have carefully reviewed this case and find that the evidence is sufficient to sustain the conviction. Although it cannot *721 be said that Neal received a perfect trial, he received a fair trial without any reversible error.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING, and COFER, JJ., concur.