# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01462-COA

**WILLIAM RAY PARKS A/K/A BILL PARKS**          **APPELLANT**
**A/K/A WILLIAM PARKS**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2015 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MATTHEW ALLEN BALDRIDGE |
| | BENJAMIN FREEMAN ROBINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED AND TWO YEARS OF POST-RELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED - 04/11/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     William Parks claimed that he shot and killed Joshua Tarver in self-defense, but a Copiah County jury convicted him of heat-of-passion manslaughter. The circuit court sentenced Parks to twenty years in the custody of the Mississippi Department of Corrections, with two years suspended and two years of post-release supervision. On appeal, Parks argues

that the jury should not have been instructed on heat-of-passion manslaughter, that the deputy medical examiner was not qualified or competent to testify as to Tarver's cause of death or about Tarver's autopsy, that there was insufficient evidence to support his conviction, and that his conviction is against the overwhelming weight of the evidence. We find no reversible error; therefore, we affirm Parks's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2. Parks lived and operated an auto repair and restoration business in a rural area of Copiah County near Crystal Springs. Parks lived with his mother, Mary, near the entrance to the property, and his business was located farther back on the land. There were also two trailers on the property. In 2014, Parks hired twenty-three-year-old Tarver to assist him at his shop. Parks also allowed Tarver to live in one of the trailers on the property.

¶3. Parks was also employed by a contractor in the offshore drilling industry. Parks went to work offshore on November 13, 2014, and did not return home until November 27, 2014. While Parks was gone, around November 20, 2014, his shop was burglarized. Tarver notified the Copiah County Sheriff's Department of the burglary, and Deputy Alvin Starkey responded and met with Tarver and Mary. Starkey asked for a list of the missing property, but he never received it. On November 22, 2014, Starkey returned to Parks's property and met with Mary. Tarver was gone, and the trailer in which he had been living was empty. Starkey attempted to call Tarver to follow up, but Tarver never returned his calls. Parks met with Starkey on November 28, 2014, after he returned home from his work offshore.

¶4. On Saturday, December 6, 2014, Parks was working in his shop. The shop was not

2

open for business, so Parks had all of its doors closed as he worked. From inside the shop, Parks heard a noise from the back of the property that sounded as though a vehicle was stuck in the mud. Parks took a .45-caliber handgun and went to investigate. Outside the shop, Parks met Mary, and Mary told him that Tarver was on the property. Parks had not seen Tarver since he returned home and learned of the burglary. Parks told Mary to call 911.

¶5.    Parks testified in his own defense at trial. He testified that as he walked toward the noise, he saw a truck with a trailer stuck in the mud. He did not recognize the truck, but he saw tools in the trailer that he believed had been stolen from his shop. As Parks emerged from a wooded area, he began firing at the truck. Parks testified that he was shooting at the truck's tires because he wanted to prevent it from leaving his property before law enforcement arrived. As he fired at the truck, Parks saw someone in his "side vision" running toward him. He turned and recognized that it was Tarver. Tarver announced, "Don't shoot! It's Josh." Parks testified that he acknowledged Tarver and told him to "stop." Park claims that he "shot at the ground in front of [Tarver's] feet to stop him." Parks then turned back toward the truck and resumed shooting at the truck.

¶6.    Parks claims that Tarver continued toward him, so he "turned around and looked at [Tarver] dead in the eye" and fired another warning shot near Tarver. Parks testified that he sensed that the truck was about to get unstuck from the mud, so he turned and again resumed shooting at the truck. Parks claims that Tarver then continued running toward him, knocked him off his feet, and grabbed for the gun. Parks testified that while they "were tussling with each other . . . on the ground," the gun "went off." Tarver was shot in the arm, and the bullet

3

traveled through Tarver's arm into his torso. Tarver fell to the ground.

¶7. Parks then stood up and fired the rest of his bullets at the truck as it left his property. He testified that he did not notice that Tarver had been shot until after the truck was gone. He then walked back to his house to check on his mother and to confirm that she had called 911. He returned to check on Tarver, who was dead, and then sat and waited for law enforcement to arrive.

¶8. When law enforcement arrived, Parks told them that he had shot Tarver. Officers looked for shell casings in the area but did not find any. They did find Tarver's cell phone, which showed that Tarver had called Parks that day. Parks claimed that cell phone reception was spotty in his shop, and he denied that he had received Tarver's calls. Judy Evans, the deputy medical examiner for Copiah County, arrived and found Tarver's body face-down in the mud. She turned over the body to photograph it and declared Tarver dead at the scene.

¶9. Parks was indicted for first-degree murder. At trial, Deputy Michael Stogner of the Copiah County Sheriff's Department testified that dispatch received a call from Mary at 1:08 p.m. to report that Parks was shooting at Tarver, who, according to Mary, "wasn't supposed to be on [Parks's] land." At 1:14 p.m., dispatch received a call from April Cline, who had been in the truck. April reported that Tarver had been shot.

¶10. April and two others who had been in the truck—Bradley Cline (April's son) and Matthew Tate—testified at trial. Bradley testified that on December 5, 2014, Tarver asked him to help him move "some tools" the next day. Bradley knew that the tools were at Curtis McManus's house, but he did not know where or why Tarver wanted to move them. On

4

December 6, 2014, Bradley, April, Tate, Destiny Cline, and Blake Griffin[1] all met Tarver at McManus's house with April's truck and trailer, and they loaded the tools into the trailer.[2]

¶11.    Tarver then drove the truck to Parks's house. The others did not know Parks. Tarver spoke to Mary near the entrance to the property, and she said that Parks was working somewhere farther back on the property. Tarver also tried to call Parks, but there is no evidence that Parks answered. Tarver drove the truck farther onto the property, and the truck and trailer became stuck in some mud. Tarver, Bradley, and Tate then got out of the truck and unhooked the trailer. They had just managed to get the truck unstuck and reconnect it to the trailer when Parks emerged from a wooded area. Parks immediately began shooting at them. Bradley, April, and Tate all testified that Tarver ran toward Parks, identified himself, and pled with Parks to stop shooting. They did not see Parks shoot Tarver, but they saw Tarver lying on the ground after he was shot. April testified that Tarver "push[ed]" Parks just before he was shot. While Parks was shooting, Tate jumped into the truck and began trying to drive away. Parks continued firing at them as they left the property.

¶12.    Evans testified—over Parks's objection—that the manner of death was "homicide" and that "[t]he cause of death was [a] gunshot wound through the left arm [that] penetrated

---

[1] Destiny is Bradley's sister and Tate's girlfriend. She and Tate were both eighteen years old at the time of trial. Blake is Bradley's friend and was sixteen years old at the time of trial. Destiny and Blake were in the truck when Tarver was killed but did not testify.

[2] McManus testified that about a week earlier, Tarver came to stay with him for a few days and asked him to help pick up the tools at a house in Brookhaven. They drove to Brookhaven and loaded the tools into McManus's covered trailer, where they remained until Tarver et al. moved them on December 6. McManus did not know who owned the house in Brookhaven, and he did not accompany Tarver et al. to Parks's house on December 6.

5

the torso." Evans witnessed Tarver's autopsy, which was performed by Dr. Erin Barnhart, a forensic pathologist. She testified that during the autopsy, Dr. Barnhart showed her the wounds and the path of the bullet. On cross-examination, Parks's counsel asked Evans how she could "tell the jury for a fact . . . that . . . Tarver did not die from a heart attack." Evans answered that, at the crime scene, Parks himself had told her that he had shot Tarver, and she was "[a]lmost certain that nothing else killed [Tarver], a young man at 23."

¶13. As noted above, Parks testified in his own defense at trial. He acknowledged firing "warning" shots in the direction of the truck and at Tarver, but he denied that he intended to shoot Tarver. Parks testified that the gun "went off" as he and Tarver struggled, after Tarver reached for the gun. He also claimed that he knew that Tarver generally carried a .40-caliber handgun; however, neither Tarver nor anyone else in the truck was armed, displayed a weapon, or returned fire on Parks at any point during the encounter.

¶14. The jury found Parks guilty of manslaughter. The circuit court sentenced him to twenty years' imprisonment, with eighteen to serve, two years suspended, and two years of post-release supervision. Parks filed a motion for a judgment notwithstanding the verdict or a new trial, which was denied, and a timely notice of appeal.

**ANALYSIS**

¶15. Parks raises three issues on appeal. He argues that the circuit court erred by granting the State's jury instruction on heat-of-passion manslaughter. He also argues that Evans was not qualified or competent to testify about the cause of death or Dr. Barnhart's autopsy findings. Finally, Parks claims that there is insufficient evidence to support the jury's verdict

6

or, in the alternative, that the verdict is against the overwhelming weight of the evidence. We find no reversible error and therefore affirm Parks's conviction and sentence.

### I.      Manslaughter Instruction

¶16.    At trial, Parks argued that the jury should be instructed on first-degree (deliberate design) murder only, not heat-of-passion manslaughter or second-degree (depraved heart) murder.  However, the trial court ruled that there was evidence from which the jury could have returned a guilty verdict on those lesser offenses and, therefore, granted the State's request for jury instructions covering them.  On appeal, Parks argues that there was no evidence to support an instruction on heat-of-passion manslaughter and that "the jury may well have arrived at a compromise verdict."

¶17.    We review the denial of jury instructions for abuse of discretion only. *Quinn v. State*, 191 So. 3d 1227, 1231-32 (¶18) (Miss. 2016).  Our standard of review "is well-established":

> Jury instructions must be read as a whole to determine if the instructions were proper.  Jury instructions must fairly announce the law of the case and not create an injustice against the defendant.  This rule is summed up as follows: In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.

*Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009) (citations, quotation marks omitted).

¶18.    "[A]s a matter of trial strategy, defense counsel may wish to have the case put to the jury on an all or nothing basis, the jury's alternatives being to find the defendant guilty [of murder] as charged in the indictment or acquitted." *Harveston v. State*, 493 So. 2d 365, 375 (Miss. 1986).  However, under Mississippi law, the prosecution has the same ability as the defendant to request and obtain an instruction on manslaughter. *Id.*  "The test for whether

7

such an instruction should be granted is the same [regardless of who requests it]: is it warranted by the evidence?" *Id.* "Where the answer is affirmative, the defendant has no right to complain of the circuit court's submission to the jury of a properly phrased [manslaughter] instruction." *Id.* In addition, the Mississippi Supreme Court has held "in a number of cases and in a wide variety of contexts that, where there is in the record evidence legally sufficient to support a jury finding of guilty of murder, had the jury so found, the defendant will not be heard to complain that a manslaughter instruction was given." *Jackson v. State*, 551 So. 2d 132, 146 (Miss. 1989) (collecting cases).

¶19.    As we explain below, there was sufficient evidence to support the jury's verdict finding Parks guilty of manslaughter. That determination necessarily disposes of any claim that there was insufficient evidence to submit the issue to the jury. Parks's primary argument is that there was no evidence of "[p]assion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time." *Jones v. State*, 39 So. 3d 860, 866 (¶36) (Miss. 2010) (quoting *Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986)). However, there was evidence from which the jury could have found that Parks became angry and shot Tarver because he perceived that Tarver had brazenly returned to his property despite having previously stolen his tools. Although Parks claimed that he acted in self-defense, the evidence also supported an inference that he acted in the heat of passion. "[T]he question of whether the defendant has committed murder or manslaughter is ordinarily a question to be resolved by the jury." *Strahan v. State*, 729 So. 2d 800, 806 (¶24) (Miss. 1998). In this case, the issue was properly submitted to the jury.

## II.   Deputy Medical Examiner's Testimony

¶20.   At trial, Parks objected when the State asked Evans: "[A]fter visiting the scene and making the observations that you made and witnessing the autopsy, were you able to determine the manner and cause of death?"  He argued that the question "call[ed] for an expert opinion" and that Evans was "not qualified as an expert."  The court overruled the objection and allowed Evans to answer because it concluded that she was not testifying as an expert.  On appeal, Parks argues that the ruling violated Mississippi Rule of Evidence 702 and his constitutional right "to be confronted with the witnesses against him."  We address these arguments in turn.

### A.   Rule 702

¶21.   We begin by emphasizing that although it is the State's burden to prove that "death resulted from a criminal agency," "[i]t is well established . . . that proof of the cause of death in homicide cases may be by lay testimony."  *Neal v. State*, 386 So. 2d 718, 719-20 (Miss. 1980).  As our Supreme Court has explained, "[t]he criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis."  *Gibson v. State*, 503 So. 2d 230, 233 (Miss. 1987) (quoting *King v. State*, 251 Miss. 161, 176, 168 So. 2d 637, 643 (1964)).  In such cases, neither an autopsy nor expert medical opinion is necessary.  *Id.*  The evidence concerning the circumstances of the death in this case was, like many homicide cases, sufficient to establish the cause of death without expert testimony.  Parks admitted that he shot Tarver, and Tarver was found dead at the scene with significant blood loss from

9

obvious bullet wounds in his arm and torso.

¶22.    Nonetheless, Parks timely objected to Evans's testimony concerning the manner and cause of death. Evans was appointed deputy medical examiner by the county coroner. She is not a medical doctor but has an associate's degree in medical laboratory technology, has completed forty hours of training in basic death investigation, and is required to complete twenty-four hours of continuing education each year. Parks argues that her opinion as to the manner and cause of death was improper expert testimony that should have been excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), which our Supreme Court adopted in *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003). In response, both during trial and on appeal, the State has agreed that Evans was *not* tendered or qualified as an expert. Thus, the issue really boils down to whether Evans's testimony was permissible *lay* opinion testimony. *See* M.R.E. 701; *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1996).

¶23.    Evans testified on direct examination that her opinions as to the manner and cause of death were based on her own observations of Tarver's body at the scene and during the autopsy. We review the trial court's decision to admit such lay opinion testimony for an abuse of discretion. *See Davis v. State*, 904 So. 2d 1212, 1215 (¶7) (Miss. Ct. App. 2004). And although we question whether such non-expert testimony as to the cause of death is truly "helpful" to the trier of fact, M.R.E. 701(b), in a previous case this Court held that a trial court did not abuse its discretion by allowing a coroner to give similar opinion testimony that a homicide victim died of a gunshot wound. *See Tillis v. State*, 176 So. 3d 37, 47-48 (¶¶22-

10

26) (Miss. Ct. App. 2014); *see also Neal*, 386 So. 2d at 720 (pre-Rules case holding that a trial court did not err by allowing a funeral director/embalmer to testify "that he assumed (but did not positively know) that [the victim] died from the gunshot wound."). Given our ruling in *Tillis*, we hold that the trial judge in this case did not abuse his discretion by overruling Parks's objection to the State's question to Evans.

¶24.    In addition, even if we thought that the ruling was an abuse of discretion, any error would have been harmless. Evans was clearly competent to testify, inter alia, that Tarver was found dead, having bled profusely from obvious gunshot wounds, and that Parks told her that he shot Tarver. Parks's only objection is that she should not have been able to say that she determined that the cause of death was a gunshot wound. However, the evidence at trial was overwhelming that Tarver died from the gunshot wound inflicted by Parks.

### B.    Confrontation Clause

¶25.    Parks also argues that his rights under the Confrontation Clause were violated because Evans testified about Dr. Barnhart's autopsy finding as to the cause of death. However, Parks did not preserve an objection on this ground. In fact, the testimony about which Parks now complains was elicited on cross-examination by his own attorney. Parks's attorney specifically questioned Evans about Dr. Barnhart's findings, and he did not mention the Confrontation Clause or move to strike Evans's testimony about the autopsy. *See Logan v. State*, 773 So. 2d 338, 346 (¶29) (Miss. 2000) (holding that objections on other grounds are not sufficient to preserve an alleged violation of the Confrontation Clause); *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) ("It is axiomatic that a defendant cannot complain on

11

appeal concerning evidence that he himself brought out at trial."). "[A] criminal defendant who fails to object to evidence introduced by the State may still have the issue reviewed on appeal for plain error. *However, a criminal defendant who affirmatively introduces evidence himself may not then complain on appeal that he introduced that evidence*." *Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cty.*, No. 2014-CA-01774-SCT, 2016 WL 6125423, at *6 n.9 (Miss. Oct. 20, 2016) (emphasis added; citation omitted). Accordingly, the issue is procedurally barred.

¶26. Procedural bar aside, the testimony at issue would not have risen to the level of plain error; rather, any error would have been harmless. As noted above, the evidence that Tarver died of a gunshot wound inflicted by Parks was overwhelming. *See Burdette v. State*, 110 So. 3d 296, 304-05 (¶¶25-26) (Miss. 2013) (holding that admission of a crime lab ballistics report in violation of the Confrontation Clause was not prejudicial because the evidence was clear that the defendant shot the victim with the gun in question).

### III.    Sufficiency and Weight of the Evidence

¶27. In his final issue on appeal, Parks argues that he is entitled to a judgment of acquittal because there was insufficient evidence to support the jury's verdict. In the alternative, he argues that he is entitled to a new trial because the verdict was against the overwhelming weight of the evidence.

¶28. When we address a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

12

doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The issue is not whether we would have found Parks guilty based on the evidence at trial; rather, his conviction must be affirmed if there was enough evidence for "any rational trier of fact" to have returned a guilty verdict. *Id.* "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18). The evidence must be "[v]iewed in the light most favorable to the verdict," and we will affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial." *Id.* at (¶19).

¶29. Parks claims that the evidence does not support the verdict because there was no evidence to show that he shot Tarver in the heat of passion. He argues that his version of events was uncontradicted at trial and supported an acquittal on all charges because the shooting was in self-defense. We disagree. As discussed above, the evidence presented at trial supported a jury instruction on heat-of-passion manslaughter, and it was also sufficient to support the jury's verdict.

¶30. The evidence indicated that Parks believed that Tarver had burglarized his shop and then absconded with his tools, and Parks had not seen Tarver since the burglary. On December 6, Parks's mother told him that Tarver was on his property looking for him. When Parks saw a truck stuck in the mud, he immediately opened fire. He then fired upon Tarver, even though he recognized him. Moreover, he continued shooting at Tarver even after Tarver identified himself and begged him to stop shooting. Parks claims that he acted in self-

13

defense or shot Tarver by accident when the gun "went off" during their scuffle, and the jury was given appropriate instructions on the law of self-defense. However, the jury could have found otherwise based on the evidence presented.

¶31. Viewed in the light most favorable to the State, there was sufficient evidence to sustain the verdict. A rational trier of fact could have concluded that Parks believed Tarver had burglarized his shop and that Tarver's return to the scene of the suspected crime aroused Parks's anger and led him to kill Tarver. Accordingly, Parks is not entitled to a judgment of acquittal. In addition, Parks's testimony did not clearly overwhelm the evidence supporting the jury's guilty verdict; thus, it does not "sanction an unconscionable injustice" to allow the verdict to stand. *Bush*, 895 So. 2d at 844 (¶18). Therefore, we cannot say that the circuit court abused its discretion by denying Parks's motion for a new trial.

## CONCLUSION

¶32. We affirm Parks's conviction and sentence. The evidence was sufficient to support an instruction and conviction on the offense of manslaughter, and the verdict was not against the overwhelming weight of the evidence. In addition, under this Court's precedent, the trial judge did not abuse his discretion by allowing the deputy medical examiner to testify as to the cause of death, and Parks waived any Confrontation Clause objection by failing to raise the issue at trial and by eliciting the testimony about which he now complains. Furthermore, even if the deputy medical examiner's testimony should have been limited in some fashion, any error was harmless because the evidence was overwhelming that Tarver died from a gunshot wound inflicted by Parks.

14

**¶33. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED AND TWO YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**