# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00118-COA

**JATRYAN MARTEL TUGGLE A/K/A JATYRAN TUGGLE A/K/A JAYTRAN TUGGLE**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:            12/08/2021
TRIAL JUDGE:                HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:  FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     BRANDON ISAAC DORSEY
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ASHLEY LAUREN SULSER
DISTRICT ATTORNEY:          PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED IN PART; REMANDED IN
                            PART - 02/27/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.    JaTryan Tuggle was tried and convicted of capital murder and conspiracy to commit armed robbery in the Forrest County Circuit Court. He was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole for this life sentence. He was also sentenced to serve twenty years[1] in

---

[1] The trial judge amended Tuggle's sentence for conspiracy to commit armed robbery on the record at the conclusion of the hearing on Tuggle's post-trial motion on December 22, 2021. The trial judge reduced the sentence from twenty years to five years (the statutory maximum sentence). However, no written order reflecting this amendment is contained in the record on appeal.

MDOC's custody for conspiracy to commit armed robbery, which was ordered to run consecutively to the life sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     On July 20, 2019, Tuggle drove his black Dodge Avenger from Jackson to Hattiesburg, Mississippi, with three passengers: Christopher Tyce, Eric Williams, and Stephon Hart. After arriving in Hattiesburg, the four men stopped at Steelman Grocery. Tyce, Williams, and Hart entered the store carrying guns and wearing face coverings while Tuggle remained outside in his vehicle, which was still running. While in the store, Tyce fired multiple shots which resulted in the death of the store's co-owner, Lisa Nguyen. Williams jumped over the counter and grabbed the cash register while Hart stood at the door as the lookout. After they robbed the store, Tyce, Williams, and Hart jumped back in Tuggle's vehicle and he drove them back to Jackson.

¶3.     On September 8, 2020, a Forrest County Grand Jury returned a four-count indictment against multiple defendants in which Tuggle was charged in Count I with capital murder pursuant to Mississippi Code Annotated section 97-3-19(2)(e) (Supp. 2017) and in Count IV with conspiracy to commit armed robbery pursuant to Mississippi Code Annotated section 97-1-1 (Rev. 2014) and 97-3-79 (Rev. 2014).[2] After a three-day trial, a jury found Tuggle guilty of both Count I and Count IV of the indictment. A sentencing order was signed on November 17, 2021. On December 1, 2021, Tuggle filed a "Motion for Judgment

_____

[2] Tuggle was jointly indicted with Tyce, Williams, and Hart. All four defendants were charged in Counts I and IV, and only Tyce was charged in Counts II and III. While there is no order in the record on appeal, the transcript reveals that the defendants' cases were severed and tried separately.

Notwithstanding the Verdict or in the Alternative a New Trial and For a Reasonable Bail Pending Appeal and Other Relief." Although a written order was never entered, the trial court denied Tuggle's motion in open court on December 22, 2021, and Tuggle filed his notice of appeal.

**ANALYSIS**

¶4.    Tuggle essentially raises three assignments of error on appeal. First, he argues that the trial court erred by permitting the Forrest County Deputy Coroner Lisa Klem to testify "as to the manner and cause of [Nguyen's] death." Secondly, he contends that the trial court erred by admitting Exhibit S-106 at trial. Third, he argues that the trial court erred by denying his motion for a directed verdict or JNOV because that the State allegedly presented insufficient evidence to convict him of capital murder and conspiracy to commit armed robbery.[3]

> **I.    Did the trial court err by permitting Forrest County, Mississippi Deputy Coroner Lisa Klem to testify as to the manner and cause of Nguyen's death?**

¶5.    Because Klem is not a pathologist and did not perform an autopsy on Nguyen, Tuggle maintains that Klem was not qualified to offer any testimony as to the cause and manner of Nguyen's death. He further argues that his Sixth Amendment right to confront the witnesses against him was somehow violated by allowing Klem to testify to the cause and manner of death. As will be discussed below, Klem conducted her own investigation and formed her own opinions that were given in court, subject to cross-examination. No autopsy report was

---

[3] The third and fourth arguments Tuggle asserts on appeal are consolidated for the purpose of analysis in this opinion in Part III.

3

offered into evidence.

¶6.     This Court addressed a similar issue in *Parks v. State*, 235 So. 3d 111, 117-18 (¶¶21-23) (Miss. Ct. App. 2017), and found as follows:

> We begin by emphasizing that although it is the State's burden to prove that "death resulted from a criminal agency," "**[i]t is well established . . . that proof of the cause of death in homicide cases may be by lay testimony**." *Neal v. State*, 386 So. 2d 718, 719-20 (Miss. 1980). As our Supreme Court has explained, "[t]he criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis." *Gibson v. State*, 503 So. 2d 230, 233 (Miss. 1987) (quoting *King v. State*, 251 Miss. 161, 176, 168 So. 2d 637, 643 (1964)). In such cases, neither an autopsy nor expert medical opinion is necessary. *Id*. The evidence concerning the circumstances of the death in this case was, like many homicide cases, sufficient to establish the cause of death without expert testimony. Parks admitted that he shot Tarver, and Tarver was found dead at the scene with significant blood loss from obvious bullet wounds in his arm and torso.
>
> Nonetheless, Parks timely objected to Evans's testimony concerning the manner and cause of death. Evans was appointed deputy medical examiner by the county coroner. She is not a medical doctor but has an associate's degree in medical laboratory technology, has completed forty hours of training in basic death investigation, and is required to complete twenty-four hours of continuing education each year. Parks argues that her opinion as to the manner and cause of death was improper expert testimony that should have been excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), which our Supreme Court adopted in *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003). **In response, both during trial and on appeal, the State has agreed that Evans was not tendered or qualified as an expert**. Thus, the issue really boils down to whether Evans's testimony was permissible lay opinion testimony. See M.R.E. 701; *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1996).
>
> Evans testified on direct examination that her opinions as to the manner and cause of death were based on her own observations of Tarver's body at the scene and during the autopsy. We review the trial court's decision to admit such lay opinion testimony for an abuse of discretion. *See Davis v. State*, 904 So. 2d 1212, 1215 (¶7) (Miss. Ct. App. 2004). And although we question whether such non-expert testimony as to the cause of death is truly "helpful"

4

to the trier of fact, M.R.E. 701(b), in a previous case this Court held that a trial court did not abuse its discretion by allowing a coroner to give similar opinion testimony that a homicide victim died of a gunshot wound. *See Tillis v. State*, 176 So. 3d 37, 47-48 (¶¶22-26) (Miss. Ct. App. 2014); *see also Neal*, 386 So. 2d at 720 (pre-Rules case holding that a trial court did not err by allowing a funeral director/embalmer to testify "that he assumed (but did not positively know) that [the victim] died from the gunshot wound."). Given our ruling in *Tillis*, we hold that the trial judge in this case did not abuse his discretion by overruling Parks's objection to the State's question to Evans.

(Emphasis added).

¶7. Pursuant to Mississippi Code Annotated section 41-61-57 (Rev. 2018), each county coroner elected after 1987, who is not a medical doctor, has been required to complete specialized training in death investigations in order to hold that office. Upon completion of "Death Investigation Training School" provided by the Mississippi Forensics Laboratory and the State Medical Examiner, the coroner is recognized as the county medical examiner investigator (CMEI). *Id*. The same statute requires a deputy coroner to undergo the same training in order to become a deputy CMEI. CMEIs and deputy CMEIs are required to complete subsequent testing on the subject material by the State Medical Examiner at least once every four years. *Id*. They are further required each year to receive at least twenty-four hours of continuing education as prescribed and certified by the State Medical Examiner or will be disqualified from holding the office of CMEI or Deputy CMEI. *Id*.

¶8. As a deputy CMEI, Klem was required to complete her portion of the certificate of death within seventy-two hours of her assuming jurisdiction over the death investigation. Her portion of the certificate would include the decedent's name, the date and time of death, and the cause of death. The statute further provides that decisions shall be made in

consultation with investigating law enforcement officials and/or the State Medical Examiner. *See* Miss. Code Ann. § 41-61-63(2) (Rev. 2018).

¶9.     In *Parks*, the deputy CMEI's testimony was offered and admitted as a lay opinion, MRE 701, and was affirmed on appeal.[4] In the present case, Klem was tendered as an expert in death investigations. She advised the court that her training included watching autopsies at the state crime lab, completing forty-hours of school courses, and completing twenty-four hours of continued education credits each year. In additional to the statutory training requirements, Klem testified that she is a licensed practical nurse. She had been previously accepted as an expert in death investigations. After conducting a voir dire examination of Klem, Tuggle's attorney objected to Klem being accepted as an expert in the field of pathology. The State responded that she was not tendered as an expert in pathology. The trial court then accepted Klem as an expert in death investigation.

¶10.    On direct and cross-examination, Klem described the steps she took in her investigation. She met with law enforcement and was given a report of what happened. She observed Nguyen's body at the hospital and determined that she did have a gunshot wound. She reviewed her medical records. Based on her observation of the body and her review of the medical records and information from law enforcement, Klem testified that she determined the cause of death to be a gunshot wound and the manner of death to be homicide. Tuggle's attorney did not make a contemporaneous objection to her testimony as

---

[4] Pursuant to *Parks*, and the authorities cited therein, we note that the authority for a non-medical doctor CMEI to give an opinion as to the cause of death may well be limited to cases involving gunshot wounds.

6

to the cause and manner of death.

¶11.  Tuggle did not properly preserve this issue for appeal.  Tuggle did not object at trial to Klem's being accepted as an expert in death investigation.  Further, Tuggle did not object to Klem's testimony as to the cause and manner of death.  In any event, we will address this issue on the merits.

¶12.  It is clear, pursuant to *Parks*, that Klem's testimony would have been admissible as a lay opinion.  However, unlike the deputy CMEI in *Parks*, Klem was tendered and accepted as an expert in the present case.  In order to hold the position of deputy CMEI, specialized training is required by statute.  Concerning the acceptance of a witness as an expert, this Court stated in *Pickett v. State*, 143 So. 3d 596, 604 (¶23) (Miss. Ct. App. 2013):

> The supreme court has established the gate-keeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable. In *Anderson v. State*, 62 So. 3d 927, 936 (¶23) (Miss. 2011), the supreme court ruled that "[t]he admission of expert testimony is within the sound discretion of the trial judge." Additionally, in *Henry v. State*, 484 So. 2d 1012, 1014 (Miss. 1986) (quoting *Hollingsworth v. Bovaird Supply Co.*, 465 So. 2d 311, 314-15 (Miss. 1985)), the court held that "[t]he trial judge is called upon to exercise his sound discretion in determining whether the witness is legitimately qualified as an expert in the applicable fields of scientific knowledge." Further, the court ruled that "[i]t is not necessary that one offering to testify as an expert be infall[i]ble or possess the highest degree of skill; **it is sufficient if that person possess[es] peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by laymen**." *Henry*, 484 So. 2d at 1015 (citing *Glens Falls Ins. Co. v. Linwood Elevator*, 241 Miss. 400, 130 So. 2d 262 (1961); *Wallace v. State*, 203 Miss. 504, 35 So. 2d 703 (1948); *Floyd v. State*, 166 Miss. 15, 148 So. 226 (1933)).

(Emphasis added).  Based on the specialized training in death investigations, including the recognition of gunshot wounds, we find that the trial court did not abuse its discretion by accepting Klem as an expert in death investigations and allowing her testimony as to the

7

cause and manner of death in this case.

¶13. In any event, multiple witnesses at trial testified that Nguyen sustained a gunshot wound on July 20, 2019. Those witnesses included multiple law enforcement officers and the emergency room doctor who evaluated Nguyen when she arrived at the hospital. Immediately before Klem's testimony, Dr. Robert Stringer, who treated Nguyen upon her arrival at Forrest General Hospital, testified as an expert in the field of general surgery that Nguyen died of a gunshot wound to her chest. Even if Klem's testimony was wrongfully admitted, it was harmless error because of the bulk of evidence corroborating the fact that Nguyen died from a gunshot wound. *See Pace v. State*, 369 So.3d 588, 598-99 (¶40) (Miss. Ct. App. 2023).

**II. Did the trial court err by admitting Exhibit S-106?**

¶14. Tuggle argues that the trial court erred by admitting Exhibit S-106 into evidence at trial. Exhibit S-106 contained information retrieved from Tuggle's cell phone, including text messages, and was introduced without objection. Rather than explaining error regarding Exhibit S-106, Tuggle directs us to the admission of Exhibit S-107, which showed the browser history from Tuggle's phone including internet searches for bank robbery movies ten days prior to July 20, 2019. Tuggle objected to the admission of this exhibit, and a hearing was conducted outside the presence of the jury.

¶15. Tuggle's primary defense at trial was that he was unaware that he was driving to Hattiesburg with the others to commit an armed robbery. Instead, he claimed that it was his understanding that the group was going to Hattiesburg to cash a fraudulent check. The State

8

argued that the internet search was proof to debunk the idea that Tuggle was unaware of the plan to commit a robbery. During arguments on his objection, Tuggle claimed that the admission of this information would be more prejudicial than probative under Mississippi Rule of Evidence 403. The trial court considered the arguments and found that the evidence was admissible to show intent and knowledge of the plan. Further, the trial court found that its probative value was not outweighed by the danger of any unfair prejudice to Tuggle.

¶16. On appeal, Tuggle again contends that allowing the exhibit to be admitted violated Mississippi Rule of Evidence 404(b) and that the probative value did not outweigh the undue prejudice caused. The State argues that the internet search fell squarely within the exceptions set forth in Rule 404(b)(2) in that the information was admitted to prove intent, preparation, and knowledge.

¶17. Our standard of review regarding the admission of this evidence is set out in *Easterling v. State*, 306 So. 3d 808, 824 (¶46) (Miss. Ct. App. 2020):

> "This Court reviews a trial court's admission or exclusion of evidence for an abuse of discretion." *Thompson v. State*, 157 So. 3d 844, 851 (¶20) (Miss. Ct. App. 2015). Mississippi Rule of Evidence 404 generally prohibits the admission of evidence of a person's character for the purpose of proving that he or she acted in conformity with that character on a particular occasion. M.R.E. 404(a). Evidence of "other crimes, wrongs or acts" is inadmissible as character evidence, but it may be admitted for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b). "[A] trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant." *Shoemaker v. State*, 256 So. 3d 604, 613 (¶36) (Miss. Ct. App. 2018). "Where the evidence's probative value outweighs its prejudice, the trial judge may admit the evidence." *Id*. at 613-14 (¶36).

The trial court considered the matters presented and the arguments of counsel. The court

found the evidence relevant to show Tuggle's intent to participate in a robbery and his knowledge of the plan to rob Steelman Grocery. Further, the trial court considered the filter of Rule 403 and found the evidence to be admissible. We find the trial court did not abuse its discretion by admitting either S-106 or S-107.

> **III. Did the trial court err by denying Tuggle's motion for a directed verdict or JNOV because the evidence presented at trial was not sufficient to convict him of capital murder and conspiracy to commit armed robbery?**

¶18. Tuggle challenges the legal sufficiency of the evidence to support the convictions of capital murder and conspiracy to commit armed robbery. His argument is based on his own testimony to the jury that he had no prior knowledge that a robbery or a murder was to occur when he drove his three co-defendants to Steelman Grocery. According to Tuggle, he thought they were going there to cash a fraudulent check. He contends that he never saw any guns or face coverings in the car and there were no discussions in the car about robbing the store. Tuggle testified that when the other three came back to his car, they pointed guns at him and told him to drive, or they would shoot him.

¶19. The State's evidence included a clear, color video from inside the store that recorded the events of that day. Just before the three masked co-defendants entered the store, the video shows Nguyen standing behind the counter checking out a customer, James Snowden, who was standing in front of the counter. Tyce was the first to burst into the store, pointing a handgun toward the counter area. Williams entered immediately behind Tyce. Hart followed Williams in the door and stopped just inside the door. Hart also had a handgun and was pointing it toward the counter area and toward the back of the store. The video clearly

10

shows Tyce fired the first shot toward Nguyen, who can be seen backing away from the counter. Tyce then turned and fired a shot toward Snowden who was trying to run to the back of the store. Tyce turned back toward Nguyen and fired another shot in her direction as Williams jumped over the counter to get the cash register. Tyce then fired another shot toward Snowden who had run toward the back of the store. Tyce turned back toward Nguyen, but his gun apparently jammed. Williams threw the cash register over the counter, jumped over himself, picked up the cash register, and all three ran out the door. The three were in and out of the store in roughly thirteen seconds.

¶20. As stated above, Tuggle does not challenge the sufficiency of the evidence to show that Nguyen was killed during the commission of an armed robbery. Instead, he contends that the evidence was insufficient to show that he conspired with the others to drive to Steelman Grocery for the purpose of committing an armed robbery or that he had any intent to participate in an armed robbery. We disagree.

¶21. To show that Tuggle had indeed conspired with the others to commit an armed robbery of Steelman Grocery, the State called Charlie Rubisoff, an expert witness in digital forensics, to testify at trial. Rubisoff testified regarding the content of multiple text messages extracted from Tuggle's cell phone between Williams and Tuggle. In one message Williams asked Tuggle if he "want[ed] to take [him] to the little play [he] was talking about yesterday." Additional texts were exchanged regarding when and where they would meet for the "little play." Further, the State provided evidence that Tuggle performed an internet search for "bank robbery movies" a few days before the armed robbery.

¶22. Detective Jeremy Dunaway testified that Tuggle admitted to him that he drove himself and the others from Jackson to Steelman Grocery in Hattiesburg. Tuggle told Dunaway that once at Steelman Grocery, they parked and sat in the car for about 35 minutes prior to the robbery. Tuggle told Dunaway that they were arguing about who was going into the store. Dunaway confirmed by surveillance video that they were, in fact, parked at the store for about 35 minutes before the three co-defendants got out of the vehicle and went into the store.

¶23. The State also called Corey Griffin who testified that he and Tuggle were in the same "pod" in the Forrest County jail. Griffin told the jury that Tuggle approached him for advice on whether he could beat the charges against him. Tuggle told Griffin that he never entered Steelman Grocery and that there was no surveillance footage showing his face at the scene of the robbery. According to Griffin, Tuggle told him that he and his friends went to Hattiesburg to "hit a lick at Steelman Grocery Store." Griffin testified that "hit a lick" meant that they were going to rob the store. Tuggle told Griffin that they planned just to rob the place, but things didn't turn out like that.

¶24. Our de novo standard of review for rulings on challenges to the legal sufficiency of the evidence is set out in *Eubanks v. State*, 341 So. 3d 896, 909-10 (¶41) (Miss. 2022):

> "When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Naylor v. State*, 248 So. 3d 793, 796 [(¶8)] (Miss. 2018) (internal quotation marks omitted) (quoting *Ambrose v. State*, 133 So. 3d 786, 791 [(¶16)] (Miss. 2013)). "The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id*. (internal quotation marks omitted) (quoting

12

*McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

> [I]f a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

*Id*. (alteration in original) (quoting *Shelton v. State*, 214 So. 3d 250, 256 [(¶29)] (Miss. 2017)).

While we view the evidence and all the reasonable inferences that can be drawn from it in the light most favorable to the prosecution, *we must also disregard all evidence favorable to the defendant*. *See Parish v. State*, 176 So. 3d 781, 786 (¶17) (Miss. 2015); *Moore v. State*, 996 So. 2d 756, 760-61 (¶12) (Miss. 2008); *Withers v. State*, 907 So. 2d 342, 352 (¶29) (Miss. 2005); *White v. State*, 722 So. 2d 1242, 1246 (¶21) (Miss. 1998).

¶25.    To the extent Tuggle challenges the weight of the evidence, the supreme court held in *Willis v. State*, 300 So. 3d 999, 1007 (¶25) (Miss. 2020):

> But "[w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Little* [*v. State*], 233 So. 3d [288,] 289 [(¶1) (Miss. 2017)].

Further, in *Butler v. State*, 354 So. 3d 308, 320 (¶32) (Miss. Ct. App. 2022), this Court stated:

> [O]ur authority to disturb the jury's verdict is quite limited. *Clayton v. State*, 652 So. 2d 720, 724 (Miss. 1995). This Court has held that "[t]he jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity." *Ford v. State*, 737 So. 2d 424, 425 (¶8) (Miss. Ct. App. 1999) (citation omitted).

13

¶26. The jury was properly instructed on the elements of capital murder, conspiracy to commit armed robbery, and as to accomplice liability. The jury was charged with determining the credibility of the witnesses and the weight of the evidence and we find no reason to disturb the verdicts.

¶27. Based on the above authorities and the evidence at trial, we also find that the evidence was legally sufficient for a rational jury to find that Tuggle conspired with the others to commit the armed robbery of Steelman Grocery during which Nguyen was killed. Further, the evidence was sufficient for a rational jury to find that Tuggle "voluntarily participated" in these crimes "with the intent to violate the law" as required by the court's instructions to the jury. *See Williams v. State*, 334 So. 3d 68, 73 (¶¶8-9) (Miss. 2022). Sufficient evidence existed to support the convictions, and the trial court did not err by denying judgment as a matter of law.

## CONCLUSION

¶28. After reviewing the record, we find no error by the trial court. Tuggle's convictions for capital murder and conspiracy to commit armed robbery and his sentence of life imprisonment without eligibility for parole for capital murder are affirmed. However, as noted above, the twenty-year sentence originally imposed for the conspiracy conviction exceeds the statutory maximum sentence for conspiracy to commit armed robbery. Therefore, the case is remanded to the circuit court for an amended sentencing order to be entered in conformity with the trial court's bench ruling on December 22, 2021.

¶29. **AFFIRMED IN PART; REMANDED IN PART.**

14

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**