GRIFFIS, P. J., for the Court:
¶ 1. Thomas Nathan Pickett appeals his sexual-battery conviction. He argues that: the trial court erred in allowing the testimony of James, a minor, under Mississippi Rule of Evidence 803(24); the trial court erred in allowing the testimony of Brandy, a minor, under Mississippi Rule of Evidence 803(25); the trial court erred in accepting Gwen Stephens as an expert witness; and the cumulative effect of the numerous errors in the trial denied Pickett his fundamental right to a fair trial. We find no error and affirm.
FACTS
¶ 2. In 2011, Pickett resided with Dawn (his wife),[1] Brandy (his stepdaughter), James (his son), and Amanda (his daughter).[2] At the time of the trial, Brandy was thirteen, James was nine, and Amanda was seven.
¶ 3. On February 26, 2011, the family had spent the afternoon fishing. After returning home, Pickett cooked for the family. After dinner, Amanda, who has a physical handicap, went to sleep in her parents’ bedroom while the rest of the family watched television in the living room.[3] Pickett told Dawn that he was going to the store to buy cigarettes. Dawn complained that Pickett never spent any time with the kids, because his job required him to be gone for days at a time, so she offered to go buy the cigarettes for him. At this point, the testimony begins to vary.
¶ 4. Pickett testified that he was watching television on the couch with his son when Dawn returned. Dawn asked him where Brandy was, and he told her that Brandy was in her bedroom. Pickett said that he then walked to the bathroom, and when he started out, Dawn was standing at the door with a gun alleging that her mother told her that he had done bad things to Brandy. Pickett denied all wrongdoing and left the house.
¶ 5. Dawn testified that when she returned home from the store after purchasing cigarettes and gas, she saw James in the recliner watching television, but Brandy and Pickett were not in the room. She testified that James asked her, “How come Daddy is always in the back with [Brandy] when you leave?” Dawn then testified that she found Brandy’s bedroom door shut, and when she attempted to open the door, she was only able to get it partially open. She testified that the door was immediately slammed back in her face, so she tried to open it again and was able to open it.
¶ 6. Dawn then testified that she found Brandy kneeling on the floor facing Pickett, and his pants and underwear were pulled down around his knees. Dawn asked him what was going on, and he said, “Nothing.” Dawn testified that Brandy said that Pickett made her do nasty things. Dawn then testified that she attempted to get Pickett out of the house, and he continued to deny everything and tried to grab her phone. Brandy then called Dawn’s mother, and Dawn grabbed a gun to try and scare Pickett out of the house. Dawn testified that Pickett grabbed the gun and held it towards her. Pickett finally left the *599 house. Dawn then took the kids to her mother’s house, and they contacted the authorities.
¶ 7. Cora Robinson, an employee of the Mississippi Department of Human Services, interviewed Brandy. Brandy told Robinson that Pickett, her stepfather, began sexually abusing her when she was seven or eight years old, and she never told anyone because Pickett had threatened to kill her and her family if she did. Brandy also told Robinson that, on the night in question, she was sitting on the couch when her mom left to buy cigarettes. Pickett walked toward the kitchen and began motioning for her to go to her room. She tried to ignore him, and he whispered for her to go to her room, and she finally went.
¶ 8. Robinson referred Dawn to Stephens, a licensed clinical social worker, for Brandy’s therapy. Stephens diagnosed Brandy with post-traumatic stress disorder and noted that Brandy suffered from migraines, nightmares, and gastric problems.
¶ 9. Pickett was indicted for the crime of sexual battery in violation of section 97-3-95 of the Mississippi Code Annotated (Rev. 2006). A jury returned a verdict of guilty, and Pickett was convicted of sexual battery. Pickett was sentenced to serve forty years, with ten years suspended, in the custody of the Mississippi Department of Corrections and five years of post-release supervision. Pickett’s post-trial motions were denied.
ANALYSIS

I. James’s Testimony

¶ 10. Pickett argues that it was error to allow James to testify at trial. However, James did not actually testify as a witness at trial. Instead, the following occurred during Dawn’s direct examination:
State: What, if anything, did you do after you came into the room?
Dawn: When I come through the house, my son stopped me and asked me ...
Defense counsel: Judge, I’m going to object what her son asked.
Court: Well, Counsel, it’s hard to know whether it’s hearsay without hearing it.
State: Let me ask another question. You went back to [Brandy’s] room, correct?
Dawn: Yes, that’s correct.
State: Was that based on a statement that you heard?
Dawn: Yes.
State: May I approach, Your Honor[?] Counselor?
At that point, a sidebar took place where the following exchange occurred:
State: Your Honor, the statement is a hearsay statement but that is the very reason she went back there. I think she has testified that is the reason. The statement was, “Why do[ ] [Brandy] and Daddy go to the back every time you leave?” And that’s why she immediately went back to the back. The State’s going to offer it not for the truth of the matter asserted but the reason why she went back to the back.
Court: The little boy said that?
State: Yes, sir.
Court: ... How old was the child?
State: Eight at the time.
Court: [Under] Rule 803 exception 24[,] ... I’m going to allow it. Ask it under that exception.
The State then resumed its direct examination of Pickett, as follows:
State: Ms. Pickett, when you came in, the first person you came in contact with was [James], correct?
*600 Dawn: That’s correct.
State: What, if anything, did he say when you came in?
Dawn: He told me, well, asked me, “how come Daddy is always in the back with [Brandy] when you leave?”
¶ 11. Pickett argues that it was an abuse of the trial court’s discretion to allow Dawn to testify about what James said to her because it was hearsay. Further, Pickett argues that the State did not did not offer a scintilla of evidence that such hearsay testimony was reliable or trustworthy, and the trial court did not make a factual finding of the same. As a result, Pickett asks this Court to find that it was reversible error for the trial court to admit the statement under Rule 803(24).
¶ 12. The trial court is entitled to a considerable amount of discretion in deciding the admissibility of evidence and will be overturned on appeal only upon a finding of abuse of discretion. Quimby v. State, 604 So.2d 741, 747 (Miss.1992).
¶ 13. Mississippi Rule of Evidence 801(c) defines “hearsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 802 provides that “[h]earsay is not admissible except as provided by law.” Rule 803(24) provides that the following is not excluded by the hearsay rule:
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
The Comment adds that “[w]hile [this rule allows] for judicial discretion, [it does] not permit an unfettered discretion which could ultimately devour the hearsay rule. Before admitting statements under this rule, the judge must make a finding that the statements being offered are sufficiently trustworthy and reliable.”
¶ 14. In response, the State argues that it was not error to allow this testimony in evidence because it was not hearsay. James’s statement to Dawn was not offered to prove the “truth of the matter” that Pickett always took Brandy to the back, but instead was offered to show why Dawn went back to Brandy’s bedroom. The State claims that the fact that the trial court found the statement admissible on other grounds does not require this Court to find that the trial court erred in its admission of the testimony. In Towner v. State, 837 So.2d 221, 225 (¶ 9) (Miss.Ct.App.2003), this Court held:
It is the customary practice, in the name of judicial economy, for an appellate court to affirm the trial court if the right results is reached even though for the wrong reason. Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993). We do not reverse where the trial court reaches the right result even when we conclude that this result was reached for the wrong reason. Booker v. State, 745 So.2d 850, 856 [ (¶ 18) ] (Miss.Ct.App.1998) (citing Carter v. State, 167 Miss. 331, 342, 145 So. 739, 741 (1933)).
¶ 15. Accordingly, we find that Dawn’s testimony about what James said was admissible evidence. The trial court incorrectly identified the evidence as hearsay but reached the correct result. Dawn’s testimony about what James told her was not hearsay, because it was not *601 admitted to prove the truth of the matter asserted; rather, it was admitted only to show why Dawn did what she did, i.e., went to the back room. We find no merit to this issue.

II. Brandy’s Testimony

¶ 16. Pickett next argues that it was error to allow Brandy’s testimony at trial. Although Brandy testified at the trial, Pickett’s concern, here, is that Robinson was allowed to testify about what Brandy told her during her interview. Pickett objected to the testimony. The State argued that the testimony was admissible under Mississippi Rule of Evidence 803(3).[4] After argument, the trial court excused the jury and conducted a hearing under Mississippi Rule of Evidence 803(25).
¶ 17. At the conclusion of the hearing, the court ruled:
Alright. The hearing has been conducted. The court finds that the minor child’s testimony should be admitted as an exception to the hearsay rule. The court specifically makes the following findings: that the child was at first hesitant and then became relaxed; that the child had been taken out of the alleged dangerous situation, as she had been moved into another home before the statement was given; that the child had a nervous affect initially; that the child was able to recount with substantial detail not only the events alleged in this indictment but a number of other events, including at least two other occasions where the defendant sought to have or had oral sex with her and one event where he sought to have intercourse with her; that the questions asked of the child were largely non-leading; that the child knew the details that an ordinary ■ twelve-year-old would not know. The court finds that no one else was present when the interview was conducted. The court finds that there is no evidence before the court of this child being coached or coerced with regard to her testimony; that there is no evidence that this child fabricated the testimony; that the court has no evidence of any motive that the child might have to lie or to make this testimony up[;] and that at all times, that her affect was at all times appropriate with regard to her testimony. Therefore, the court finds that the child’s description of the sexual acts as contemplated in Rule 803 subsection (25) — in addition, that the State does intend to call the child as a witness during the trial of this matter, and the court finds that that testimony is admissible under 803(25).
¶ 18. Thereafter, Robinson testified as follows:
State: If you would, please, tell the ladies and gentlemen of the jury what [Brandy] told you concerning Nathan Pickett when you interviewed her on February 27.
Robinson: Concerning Nathan Pickett, that she hated him for what he was doing to her.
State: What, if anything, did she tell you he was doing to her?
Robinson: That he was doing nasty things such as putting his thing in her mouth.
State: What, if anything else, did she describe to you as a nasty thing? Robinson: The mucus.
State: In her words how did she say anything about mucus?
*602 Robinson: The mucus that was coming from his thing that he would make her swallow it but that particular night she did not swallow it, that she spit it out.
State: And you said she said it was coming from [his] “thing.” What was she referring to as a “thing?”
Robinson: Coming from his thing.
State: His thing.
Robinson: His penis.
State: Alright. Was anyone else with you when you interviewed her?
Robinson: No.
State: Just you and her?
Robinson: Yes.
State: What, if anything else, did she describe to you?
Robinson: The truck incidents, the abuse when they w[ere] hunting. What truck incident?
State: What truck incident?
Robinson: When they would be in a truck, oral sex would take place.
State: Why would they be in a truck?
Robinson: That was the transportation to get back home.
[[Image here]]
State What, if any, other events of a sexual nature did she describe between herself and Nathan Pickett?
Robinson: Being in their bathroom, being in her stepdad and her mother[’s] bathroom.
State: What happened there?
Robinson: He attempted to try to have intercourse with her.
State: Is “intercourse” your word or hers?
Robinson: I believe it’s mine.
State: The jury wasn’t in here earlier, so when he attempted to have intercourse, what did she say he attempted to do?
Robinson: By putting her against the wall and have her pull her panties down.
State: And then what?
Robinson: And his penis touch her private area.
State: What, if anything, did she tell you about how the incident on February 26 stopped?
Robinson: That incident, according to her, stopped when her mother arrived back from the store and she walked down the hall, saw her bedroom door closed, [Brandy] bedroom door closed, and she slammed it open and she observed what was taking place and that’s how that....
Defense counsel: I’m going to object to what the mama told her.
State: No, this is what [Brandy] ...
Court: Overruled. It’s the testimony of the child....
Robinson: This is what [Brandy] told me.
State: Okay, go ahead. So the mama opened the door and then what?
Robinson: Her mother slammed the door open and that’s when she observed the scene.
State: And where did they go from there, meaning, [Brandy] and her mom.
Robinson: [Brandy], her mother and the two other children left the trailer house and went to the motherf’s].. home for safety, for the children’s safety and well[-]being.
State: When she was telling you about various things that had happened, what, if anything, did she tell you about how old she was when the first thing happened between her and Mr. Pickett of a sexual nature. *603 Robinson: She stated that she was about seven or eight years old.
¶ 19. Pickett contends that the trial court’s reliance on Robinson’s testimony as to what Brandy allegedly said about the incident should not pass the suffieiency-of-reliability test under Rule 803(25). Pickett claims that, at a minimum, the trial court should have conducted an in-camera hearing or meeting in chambers with Brandy, whose testimony was being offered. As such, Pickett concludes that Robinson’s determination of what she believed was reliable in Brandy’s statements creates an impression that Robinson is a human lie-detector test. Further, Pickett argues that Brandy had a motive to lie, and her statements made to Robinson were not spontaneous.
¶ 20. Once again, we review the trial court’s decision on the admission of evidence for abuse of discretion. Smith v. State, 989 So.2d 973, 983 (¶ 33) (Miss.Ct.App.2008). Mississippi Rule of Evidence 803(25) provides:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness....
The Comment lists multiple factors that the trial court should consider to determine if the statement is substantially reliable:
(1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declar-ant’s age, knowledge, and experience make it unlikely that the declarant fabricated. Corroborating evidence may not be used as ... indicia of reliability.
M.R.E. 803(25) cmt.
¶ 21. As required by Rule 803(25), the trial court held a hearing, outside the presence of the jury, to determine whether the statements made had substantial indi-cia of reliability. The trial court found that Brandy was of tender years when she made the statement, as she was twelve years old, and Robinson was examined in regard to her meetings with Brandy after the alleged incident. The trial court found that Brandy’s statements to Robinson had substantial indicia of reliability, and Brandy testified at trial. Because all of the requirements for the residual exception of Rule 803(25) were met, Pickett’s argument that the trial court erred in allowing the testimony fails. We find no merit to this issue.

III. Acceptance of Stephens as Expert Witness

¶ 22. Pickett asserts that the trial court erred in accepting Stephens as an expert, pursuant to Mississippi Rule of Evidence 702. Pickett contends that Stephens’s methodology for arriving at her opinion cannot be tested for reliability and is based entirely upon Stephens’s subjective belief. Pickett argues that: (1) Stephens has never previously testified in a criminal court, (2) Stephens admitted that Dawn *604 had participated in some of the interviewing sessions, (3) Stephens admitted that her answers were derived from Brandy’s responses, and Stephens never followed up with anyone to ascertain whether the statements were truthful, (4) Stephens was never informed that Pickett had recently disciplined Brandy, (5) Stephens never visited the home where the allegations were said to have occurred, and (6) Stephens attributed health issues to the alleged incident but was never informed that these health concerns had existed prior to the incident.
¶23. Mississippi Rule of Evidence 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
The supreme court has established the gate-keeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable. In Anderson v. State, 62 So.3d 927, 936 (¶ 23) (Miss.2011), the supreme court ruled that “[t]he admission of expert testimony is within the sound discretion of the trial judge.” Additionally, in Henry v. State, 484 So.2d 1012, 1014 (Miss.1986) (quoting Hollingsworth v. Bovaird Supply Co., 465 So.2d 311, 314-15 (Miss.1985)), the court held that “[t]he trial judge is called upon to exercise his sound discretion in determining whether the witness is legitimately qualified as an expert in the applicable fields of scientific knowledge.” Further, the court ruled that “[i]t is not necessary that one offering to testify as an expert be infall[i]ble or possess the highest degree of skill; it is sufficient if that person possesses] peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by laymen.” Henry, 484 So.2d at 1015 (citing Glens Falls Ins. Co. v. Linwood Elevator, 241 Miss.400, 130 So.2d 262 (1961); Wallace v. State, 203 Miss. 504, 35 So.2d 703 (1948); Floyd v. State, 166 Miss. 15, 148 So. 226 (1933)).
¶24. Stephens testified that her methodology was based on information gathered from her client though an interview. She explained in detail how she used the information gathered in her interviews to reach a diagnosis. This Court addressed this issue in Carter v. State, 996 So.2d 112 (Miss.Ct.App.2008). There, the defendant argued that the testimony of an expert in forensic interviewing and child abuse, and the testimony of a forensic interviewer with the Children’s Advocacy Center, should not have been allowed because “their testimonies cannot be tested and Daubert specifically lists testability as a factor.” Id. at 116-17 (¶ 15). The Court held that “the accuracy of forensic interviewing is largely untestable, and that Daubert factor therefore does not apply when determining the admissibility of such an expert’s testimony.” Id. at 117 (¶ 16). The Court also noted there have been other cases where such testimony has been accepted as admissible. Id. at (¶ 17).
¶ 25. Here, we find no reason for a different result. We do not find that the trial court abused its discretion by accepting Stephens as an expert witness and allowing her to testify. We find no merit to this issue.

IV. Cumulative Error

¶26. Under this issue, Pickett argues that the trial court erred when it allowed *605 the prosecutor to use prejudicial inflammatory language. During the cross-examination of Pickett, the following exchange occurred in the presence of the jury:
State: Why would she say that?
Pickett: Because she didn’t want me to have my young[’]uns. She wanted to keep my young[’]uns from me.
State: She’s giving you visitation, dude, how is that even....
Pickett: After three months of taking me to court to fight for my young[’]uns.
State: That’s not plausible. You’re looking for excuses.
Pickett: No sir, I’m not looking for excuses.
State: You’re looking for excuses because you remember that kid and you put. your f* * *ing penis in her mouth.
Defense Counsel: Your Honor, I would object to that. He’s being argumentative with him.
Court: I’m going to allow him to answer that ... and then move on.
¶ 27. Pickett argues that although counsel may have wide discretion during cross-examination, the prosecutor’s question was “highly prejudicial, argumentative and delivered for the sole purpose of inflaming the jury.” As authority to reverse the conviction on this issue, Pickett cites to the following principle—“If a combination of specific errors, harmless in each instance, accrued so that a defendant was denied a fair trial, we will reverse based on cumulative error.” Kolberg v. State, 829 So.2d 29 (¶ 181) (Miss.2002).
¶ 28. In Baine v. State, 604 So.2d 249, 256 (Miss.1992), the court stated that “[t]his Court has repeatedly and consistently held that such action [ (instruction to the jury to disregard testimony)] is sufficient to remove any prejudice resulting from the improper testimony.” See also Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989) (improper speculative testimony rendered non-prejudicial when trial court sustained objection and instructed jury to disregard testimony); Wright v. State, 540 So.2d 1, 4 (Miss.1989) (“Absent unusual circumstances, where [an] objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error.”); Marks v. State, 532 So.2d 976, 982 (Miss.1988) (refusal to grant mistrial was proper where trial court sustained objection and instructed jury to disregard improper testimony); see also Smith v. State, 530 So.2d 155, 161 (Miss.1988). However, the supreme court has also held that
[t]he trial judge, however, is in the best position to determine if a remark is truly prejudicial, and is given considerable discretion to determine whether a remark creates irreparable prejudice necessitating a mistrial. Where the remark creates no irreparable prejudice, then the trial court should admonish the jury to disregard the improper remark.
Baine, 604 So.2d at 257 (quoting Reynolds v. State, 585 So.2d 753, 755 (Miss.1991)).
¶ 29. Here, it appears that the prosecutor got caught in the heat of battle during the cross-examination of Pickett. While we recognize that the prosecutor’s statement lacked the professionalism expected of a prosecutor for the State of Mississippi, we also note that Pickett’s counsel did not ask the trial court for a limiting instruction, an admonishment, or any sanction against the prosecutor. Instead, Pickett’s objection was simply that he was “being argumentative.” We certainly do not condone the prosecutor’s question. However, we find that this improper question did not rise to such a level *606 of prejudice as to warrant reversible error. There was sufficient evidence presented to the jury to support their findings. Accordingly, we find no error as to this issue.
¶ 30. Having found no error in the issues presented, we affirm the judgment of conviction.
¶ 31. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED AND THIRTY YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $10,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Dawn is now his ex-wife.

. Because of the nature of the charge, the names of the minors involved have been changed to protect their identities.

.At the time of the crime, Amanda shared a bedroom with her parents.

. Mississippi Rule of Evidence 803(3) is a hearsay exception for "Then Existing Mental, Emotional, or Physical Condition.”