# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00518-COA

**KEVIN DARNELL POWELL A/K/A KEVIN POWELL**                                      APPELLANT

v.

**STATE OF MISSISSIPPI**                                                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2015 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | IMHOTEP ALKEBU-LAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/29/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE, FAIR AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1. On May 6, 2014, a Warren County grand jury indicted Kevin Powell for one count of sexual battery of a child under the age of fourteen in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014). After a jury trial, Powell was found guilty. Powell was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with twelve years to serve, eight years suspended, and five years of postrelease supervision. Additionally, Powell was ordered to pay fines, restitution, and other fees totaling $6,784.50.

¶2.    Following trial, Powell moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; the trial court denied his motions.  Powell now appeals.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3.    In August 2013, after spending a night at Powell's house, Z.H.[1] told her grandmother, Louise Trueheart, that Powell had been bothering her.  While staying at Powell's—who is Z.H.'s uncle—Z.H. fell asleep lying on the floor with her cousins.  Powell picked up Z.H. and carried her into a bedroom, where he allegedly "touch[ed] her" and "[put] his mouth on her."  At trial, Louise testified that when she asked Z.H. if Powell has put his "thing" in her mouth, Z.H. said yes.

¶4.    Next, Louise called Z.H.'s mother, Katherine Trueheart, to inform her of the incident.  Katherine testified that after she asked Z.H. what happened, Z.H. told her that Powell had "touched her lady," and Powell "had his face between her legs."  Then on August 12, 2013, Katherine filed a police report with the Vicksburg Police Department.

¶5.    Later that afternoon, Powell voluntarily arrived at the Vicksburg Police Department, waived his rights, and was interviewed by Lieutenant Troy Kimble.[2]  In the interview, Powell confirmed that Z.H. spent the night.  But Powell claimed that it looked as though Z.H. was masturbating while she was lying on the floor.  And so, he claimed that he carried her to a

---

[1] The name of the minor victim is changed for confidentiality purposes.  Z.H. was born in 2007.

[2] Powell's interview was played for the jury.

bedroom, where he smelled her hands to see if she had been "touching herself." Powell claimed that when he did this, Z.H. moved, and that movement caused her pajama bottoms and underwear to slide down. Powell stated that he smelled around Z.H.'s naval. He claimed that he bumped her naval, she woke up, and then pushed his head toward her vagina. According to Powell, Z.H. said she would not tell on him.

¶6. Eventually, on May 6, 2014, Powell was indicted by a Warren County grand jury for one count of sexual battery of a child under the age of fourteen in violation of section 97-3-95(1)(d).

¶7. The Vicksburg Police Department referred Z.H. to the Mississippi Children's Advocacy Center (MCAC). At MCAC, Z.H. was interviewed by Erin Gowen—a licensed social worker.[3] During the interview, Z.H. stated that when she spent the night at Powell's house, he "licked [her] lady" and "put his thing in [her] mouth."[4] Z.H. further stated that [Powell] told [her] not to tell anyone."

¶8. At trial, Gowen testified that she had worked as a forensic interviewer for three years and had conducted over 300 forensic interviews. Gowen also testified that she had been trained in three interviewing protocols: the RATAC,[5] Child First, and Conner House. She

___

[3] Z.H.'s interview was played for the jury.

[4] Gowen used anatomical drawings to determine that Z.H. used the word "lady" to mean "vagina" and the word "thing" to mean "penis."

[5] The RATAC interviewing protocol is not defined within the record, but RATAC is an acronym for the forensic-interview protocol of rapport, anatomy, touch inquiry, abuse scenario, and closure. *See Mason v. State*, 203 So. 3d 732, 735 n.3 (Miss. Ct. App. 2016).

further explained that there was not much difference between these three interviewing protocols. Gowen testified that her report in this case was based on her use of the RATAC protocol—which was reviewed by her supervisor. Gowen also testified that she had been previously accepted as an expert witness in Hinds County Youth Court. The State then tendered, and the circuit court accepted, Gowen as an expert in the field of forensic interviewing. Gowen testified that in her opinion, Z.H.'s disclosure during the interview was consistent with a child who had been sexually abused.

¶9. Prior to the trial, the circuit court was informed that Powell was not communicating with defense counsel. Powell's counsel claimed that due to Powell's lack of cooperation, he did not feel that he was going to be properly prepared to go to trial. And so, his counsel asked to withdraw from Powell's case. Powell also informed the circuit court that he did not feel as though he would have adequate representation at trial. According to Powell, his counsel told him that he was not allowed to have any witnesses. But when the circuit court asked Powell what potential witnesses he had, Powell referenced a brother-in-law in California—but he could not recall his name. When the circuit court asked Powell's counsel about Powell's claim that he was advised that he could not have any witnesses, counsel stated that "[Powell] wanted to call character witnesses . . . ."

¶10. The trial court then asked Powell what the potential witness would say; Powell stated that Z.H.'s grandmother, Louise, also accused this potential witness of sexual battery of a child. And Powell stated that there was no attempt by his counsel to contact this witness.

4

Yet when the circuit court asked Powell the potential witness's name, Powell could not recall his name. And when the circuit court asked about any other potential witnesses, Powell admitted that the others were character witnesses.

¶11.   The next day, the circuit court asked Powell if he had obtained the name of the witness in California. Powell stated that he had not, but he knew his last name was "Dillon." Later that day, it was discovered that Louise had the contact information for her son-in-law, Marcus Dillard, who lived in California.

¶12.   As the circuit court instructed, counsel for both parties contacted Dillard and informed the circuit court of what Dillard said. Dillard stated that Louise once told Dillard's wife that she was not comfortable with him being alone with his children, and that she did not trust him. When asked if he had specifically ever been accused of any inappropriate sexual action toward his children, Dillard said no.

¶13.   The circuit court then instructed counsel for both parties to draft the following statement, which the circuit court read to the jury at trial:

> Members of the jury, the name of Marcus Dillard has been mentioned during trial. Marcus Dillard is married to Jessica, the daughter of Louise Trueheart. If called to testify he would say he was aware that Louise Trueheart told his wife, Jessica, that Louise was not confortable with him being alone with his children if something should happen to Jessica.
>
> The [c]ourt is allowing this out of court statement, not for the truth of the matter asserted[,] but only for the purpose that the statement was in fact made.

¶14.   Also, during the pretrial hearing, Powell argued that counsel did not have a defense strategy. After being asked by the circuit court when he lost faith in his attorney, Powell

5

answered "about four months ago." Powell's counsel said that he would "abide by whatever the [circuit] [c]ourt rule[d] to the best of [his] ability." Several days later, Powell and his defense counsel proceeded to trial.

¶15. After Powell's trial, the jury returned a verdict of guilty. The judgment of conviction was entered on November 12, 2015. Powell then retained new counsel to represent him in his posttrial proceedings. After posttrial proceedings, Powell was sentenced to serve twenty years in the custody of the MDOC, with twelve years to serve, eight suspended, and five years of postrelease supervision. The sentencing order after the guilty verdict and after the presentence investigation was entered by the circuit court on December 10, 2015. On December 17, 2015, Powell moved for a JNOV or, in the alternative, a new trial challenging, among other things: (1) the effective assistance of trial counsel, (2) the sufficiency of the evidence, and (3) the weight of the evidence. After a hearing, the trial court denied Powell's motion. Powell now appeals.

## DISCUSSION

### I.  Ineffective Assistance of Counsel

¶16. On appeal, Powell argues that his right to a fair trial and to call witnesses on his behalf was denied when his counsel mischaracterized his fact witnesses as character witnesses, and erroneously informed him that he could not call character witnesses or any other witnesses. After a review of the record and the parties' briefs, we characterize, and thus address, Powell's argument as an ineffective-assistance-of-counsel claim raised on direct appeal.

¶17.    Rule 22(b) of the Mississippi Rules of Appellate Procedure provides:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.  Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

And the Mississippi Supreme Court has held:

> It is unusual for [an appellate c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal.  This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief.  [An appellate c]ourt will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations omitted).

¶18.    The record does not affirmatively indicate that Powell received ineffective assistance of constitutional dimensions.  Nor have both parties explicitly stipulated that the record is adequate to allow us to make findings without considering a trial judge's findings of fact. *Gordon v. State*, 977 So. 2d 420, 425 (¶9) (Miss. Ct. App. 2008).  As a result, we decline to address the merits of this issue.  Thus, we dismiss Powell's claims under this heading without prejudice to his ability to raise it in postconviction proceedings, if he chooses to do so.

## II. Designation of the Expert Witness

¶19. Next, Powell claims that the trial court abused its discretion in accepting Gowen as an expert witness.

¶20. For expert testimony to be admitted at trial, the testimony must conform to the requirements of Mississippi Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

M.R.E. 702. Expert testimony, under Rule 702, must be both relevant and reliable. *Corrothers v. State*, 148 So. 3d 278, 294 (¶24) (Miss. 2014). "Testimony is reliable when it is 'based upon on scientific facts or data,' is 'the product of reliable principles and methods,' and when 'the witness has applied the principles and methods reliably to the facts of the case.'" *Id*. at 295 (¶25). "[T]he admission of expert testimony is within the sound discretion of the trial judge." *Pickett v. State*, 143 So. 3d 596, 604 (¶23) (Miss. Ct. App. 2013). Unless the decision was arbitrary and clearly erroneous—amounting to an abuse of discretion—the trial judge's decision will stand. *Roberts v. Grafe Auto Co.*, 701 So. 2d 1093, 1098 (Miss. 1997) (citing *Seal v. Miller*, 605 So. 2d 240, 243 (Miss. 1992)).

¶21. Here, Powell argues that Gowen was not qualified to testify as an expert, and because she was not qualified, her testimony was unreliable. As for her qualifications, we find that

the circuit court did not err in finding that Gowen was qualified to testify as an expert in the field of forensic interviewing. First, Gowen testified that she earned a bachelor's degree in social work, and she was licensed as a social worker by the State of Mississippi. Second, Gowen testified that she had three years of experience working as a forensic interviewer, and had conducted over 300 interviews. Third, Gowen testified that she had received training in the forensic-interviewing protocols. And lastly, Gowen further testified that she had been previously accepted as an expert witness in Hinds County Youth Court.

¶22. Yet Powell takes issue with the fact that Gowen was unable to distinguish between the various interviewing protocols: Child First, Corner House, and RATAC. Gowen testified that at the time of Z.H.'s interview, the MCAC was using the RATAC—which was developing into Child First. And Gowen explained that the protocols had a lot of similarities, with very little difference between them. What is more, Gowen testified that not only did she adhere to the RATAC protocol when she conducted Z.H.'s interview, but the interview was reviewed by her supervisor. The record shows that Gowen testified—in detail—as to how she conducted the interview with Z.H., and she testified in detail as to what Z.H. told her. After reviewing the record, we find no indication that Gowen failed to reliably apply the principles and methods of forensic interviewing to the facts of the case. Thus we find that the circuit court judge did not abuse his discretion in admitting Gowen's expert testimony. This claim is without merit.

### III. Denial of Motion for JNOV or New Trial

9

¶23. Lastly, Powell claims that the circuit court erred in denying his motion for a JNOV or, in the alternative, a new trial. A motion for a JNOV challenges the legal sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). While on the other hand, a motion for a new trial challenges the weight of the evidence. *Id.* at 844 (¶18).

¶24. In arguing that the circuit court erred in denying his motion for a JNOV or new trial, Powell relies not on arguments that challenge the legal sufficiency of the evidence or the weight of the evidence. Instead, Powell's arguments under this issue are related to his ineffective-assistance-of-counsel claims.

¶25. While the circuit court denied Powell's motion, we decline to delve into the merits of this issue on appeal, as we find that Powell's motion was untimely. Uniform Rule of Circuit and County Court Practice 10.05 required that "a motion for a new trial *must* be made within ten days of the entry of judgment."[6] (Emphasis added). As for a motion for a JNOV, our supreme court has held "that a motion for a JNOV, as it relates to a criminal case, is untimely where filed beyond the ten-day limit for a motion for a new trial and beyond the term of the court." *Well v. State*, 73 So. 3d 1203, 1206 (¶5) (Miss. Ct. App. 2011) (quoting *McGraw v. State*, 688 So. 2d 764, 770 (Miss. 1997)).

¶26. In this case, the record shows that Powell's judgment of conviction, though not

---

[6] We note that the Uniform Rules of Circuit and County Court Practice no longer govern criminal practice in Mississippi, and have been replaced by the Rules of Criminal Procedure, effective July 1, 2017. Because Powell's motion preceded this change, we apply Rule 10.05 and the accompanying precedent in this case. The rule currently in force, Rule 25.1(c), also includes a ten-day deadline. MRCrP 25.1(c).

explicitly titled as such, was entered on November 12, 2015.[7]  Under the Uniform Rule of Circuit and County Court Practice 10.05, the ten-day time limitation was measured from the date of conviction.  *See Allen v. State*, 200 So. 3d 1100, 1101 (¶2) (Miss. Ct. App. 2016).  And so, to be timely,  Powell's motion for a new trial would have needed to be filed within ten days of November 12, 2015.  Instead, however, Powell's motion was not filed until December 17, 2015—well past the ten-day requirement, and also outside of the term of the court.[8]  Warren County's first November 2015 term began on Monday, November 2, 2015.  The term lasted two weeks—ending on November 16, 2015.  And so, the term of the court expired before the ten-day limit for filing a motion for a JNOV or, in the alternative, a new trial.  This Court has held that the circuit court does not have any discretion to extend time limits for filing a motion for a JNOV or new trial.  *Ross v. State*, 16 So. 3d 47, 53 (¶7) (Miss. Ct. App. 2009).

¶27.    Though the circuit court denied Powell's motion on the merits, on appeal, we find that Powell's motion was untimely, and thus, should have been dismissed.  As such, we decline to address the merits of the circuit court's denial of Powell's motion for a JNOV or new trial.  This issue is without merit.

## CONCLUSION

¶28.    Upon review of the record, we find no merit to any of the issues raised on appeal.

_____

[7] Powell's judgment of conviction was titled "Order Jury Verdict and Pre-Sentence Investigation."

[8] *See* State of Mississippi Judicial Directory and Court Calender (2015).

11

Therefore, we affirm the judgment of the circuit court.

¶29.    **AFFIRMED.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS, J., NOT PARTICIPATING.**