# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01211-COA

DAVID LEE HERBERT A/K/A DAVID HERBERT                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2016 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA M. AINSWORTH |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 01/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, C.J., FOR THE COURT:**

¶1.     David Lee Herbert appeals his conviction of fondling.  He argues that the victim's statements were erroneously admitted under the tender-years hearsay exception and he was entitled to a circumstantial-evidence jury instruction.  We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.     In December 2012, eight-year-old Amy[1] and her younger brother were visiting their

---

[1] We substitute a fictitious name for the minor child in order to protect her identity.

paternal grandmother, Sue, over Christmas break. On a Thursday, Amy and her brother spent the night at her aunt Suzanne's house. Suzanne, Sue's daughter, is married to Herbert. On Friday, Amy spent the night with her other grandmother. Amy and her brother returned to Sue's house on Saturday.

¶3. When Amy and Sue were getting ready for bed, Amy mentioned that she had broken a new electronic device she had received for Christmas and commented that "bad things" were happening. Sue noticed that Amy was "fidgety" and kept tossing and turning in bed. Sue asked Amy if she felt bad, and Amy responded that she did not. After Amy continued to toss and turn, Sue asked her again what was wrong. Amy responded, "Maw-maw, I need to tell you something . . . . I don't think this was a dream, maw-maw . . . . I think I was molested at auntie's house."[2] Amy advised that she felt someone kiss her breast and touch her. When Sue asked who had kissed and touched her, Amy stated that she did not see the person but that the person had big hands and smelled like smoke. In response, Sue commented that the only adults at the house that night were Suzanne and Herbert and that it must have been Herbert who had touched her.

¶4. Sue subsequently called Amy's parents and advised them of the allegations. The Bolivar County Sheriff's Department was contacted. Investigator Michael Williams interviewed Sue and Herbert. Investigator Williams did not speak with Amy but, instead, referred her to a forensic interviewer.

_____

[2] The record reflects that Amy refers to Suzanne as "auntie."

¶5. In February 2013, Jaime Moore conducted a forensic interview of Amy. During the interview, Amy identified Herbert as the person who had touched her. Amy advised that Herbert touched her breast with his mouth and touched her vagina with his hand.

¶6. Prior to trial, the circuit court held two separate hearings outside the jury's presence to determine whether Amy's statements to Sue and Moore were admissible. After considering the time, content, and circumstances surrounding Amy's statements, the circuit court ruled that the statements had substantial indicia of reliability and were admissible under the tender-years hearsay exception.

¶7. At trial, Sue and Moore testified regarding Amy's statements. Amy also testified. Amy explained that while at Suzanne's house, she and her brother slept on the couch in the living room; Suzanne and Herbert slept in their bedroom. Throughout the night, Amy would hear Suzanne and/or Herbert come in to check on them. At one point, Herbert came in, raised up her shirt, and kissed her "upper chest" or "boobs" with "his lips." He then "reached in [her] pants and touched [her] vaginal area" with "his hand" and left. According to Amy, her brother was asleep on the other end of the couch. Although her eyes were closed, Amy was not asleep.

¶8. Herbert was convicted of fondling and sentenced to serve ten years in the custody of the Mississippi Department of Corrections, with two years suspended, followed by two years' supervised probation. He was further ordered to register as a sex offender upon his release from incarceration.

3

¶9.    Herbert filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, which the circuit court denied. Herbert now appeals and argues that the circuit court erred in: (1) the admission of Amy's hearsay statements under the tender-years exception, (2) the denial of his motion for a new trial, and (3) the refusal of his circumstantial-evidence and two-theory jury instructions.

ANALYSIS

I.    *Whether the circuit court erred in admitting Amy's hearsay statements under the tender-years exception.*

¶10.    Herbert first argues "Amy's hearsay statements were unreliable and therefore improperly admitted under the tender[-]years exception to the hearsay rule." "The admission or suppression of evidence is within the sound discretion of the [circuit court] and will not be reversed unless there is an abuse of that discretion." *Sturkey v. State*, 946 So. 2d 790, 794 (¶11) (Miss. Ct. App. 2006). "We will only reverse under that standard if the admission of the evidence results in prejudice or harm to the opposing party, or if it adversely affects a substantial right of the party." *Id*.

¶11.    "Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c). Hearsay is inadmissible unless the law provides an exception. M.R.E. 802.

¶12.    Here, the circuit court found Amy's hearsay statements to Sue and Moore were admissible under the tender-years exception set forth in Mississippi Rule of Evidence

4

803(25). "A statement by a child of tender years describing any act of sexual contact with or by another [may be] admissible . . . ." M.R.E. 803(25). Such statement is admissible if: (1) the circuit court finds the child was of tender years when the statement was made, (2) the circuit court, after a hearing outside the jury's presence, determines the statement has substantial indicia of reliability, and (3) the child either testifies or is unavailable as a witness, and other evidence corroborates the act. *Webb v. State*, 113 So. 3d 592, 598 (¶16) (Miss. Ct. App. 2012) (citing M.R.E. 803(25)).

¶13. It is undisputed that Amy, who was eight years old at the time the statements were made, is a child of tender years. Indeed, a child under the age of twelve is presumed to be of tender years. *Little v. State*, 72 So. 3d 557, 560 (¶10) (Miss. Ct. App. 2011). It is further undisputed that Amy testified at trial. Thus, the only disputed issue is whether the circuit court erred in finding that Amy's statements to Sue and Moore were reliable.

¶14. The comment to Rule 803(25) lists several factors that the circuit court should consider to determine if there is sufficient indicia of reliability:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

¶15. During the hearing, Sue testified that Amy makes straight A's in school and was able

5

to communicate to her what had happened. Sue further testified that Amy has never before made such a statement. Sue explained that she has always told Amy that if Amy ever needed to tell her something, to tell her, and she would be there for her. Amy started to cry when she told Sue what had happened and was not upset when Sue told her parents. According to Sue, Amy does not have a vivid imagination where she would make up things. Sue emphasized that she believes Amy and has no reason to think that Amy is lying.

¶16.    Additionally, Moore testified that Amy was "on target developmentally and cognitively" and had no difficulty recalling the details of what had occurred. In speaking with Amy, Moore did not detect any type of motive or reason for Amy to have fabricated the allegations. Moore did not believe there was any "coaching" or suggestions made to Amy to elicit the statement. Moore explained that "there was no language such as 'my mom says' or whoever relative has said or told me to say." Importantly, Moore explained that Amy demonstrated the ability to correct misstatements and communicated her statements with certainty.

¶17.    Herbert asserts "Amy's identification of [him] [to Moore] as the person who allegedly touched her was informed by Sue and the inferences drawn by Sue." Sue acknowledged that in response to Amy's statements, she commented that it must have been Herbert who had touched her. Yet, Sue explained that she was simply trying to put together what had happened, knowing that Suzanne and Herbert were the only adults present at the house. Additionally, the record shows that at the time Sue made the comment to Amy, Amy had

6

already disclosed the circumstances surrounding the allegations. In other words, Amy had already disclosed where she was when she was touched (i.e., her aunt's house) and that the person who touched her smelled like smoke and had big hands. Thus, despite Sue's comment regarding Herbert, Amy had already described the person who had touched her, without having to say his name.

¶18. Based on the testimony and evidence presented, we do not find the circuit court's admission of Amy's statements under the tender-years exception was an abuse of discretion.

> II.    *Whether the circuit court erred in denying Herbert's motion for a new trial.*

¶19. Herbert next argues the circuit court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. However, we find Herbert's motion for a new trial was untimely filed. As a result, this issue is procedurally barred.

¶20. Pursuant to Uniform Rule of Circuit and County Court Practice 10.05, "a motion for a new trial must be made within ten days of the entry of judgment."[3] The ten-day time limitation set forth in Rule 10.05 is measured from the date of conviction. *Powell v. State*, 240 So. 3d 449, 455 (¶26) (Miss. Ct. App. 2017).

---

[3] The Uniform Rules of Circuit and County Court Practice no longer govern criminal practice in Mississippi and were replaced by the Rules of Criminal Procedure, effective July 1, 2017. Because Herbert's motion preceded this change, we apply Rule 10.05 and the accompanying precedent in this case. The current rule, Mississippi Rule of Criminal Procedure 25.1(c), also includes a ten-day deadline. Under the current rule, the ten-day time period does not begin to run until the defendant is sentenced. *See id*.

¶21.    The record shows that Herbert's judgment of conviction was entered December 16, 2015.  Thus, to be timely, Herbert's motion for a new trial would have needed to be filed within ten days of December 16, 2015.  Yet, Herbert did not file his motion for a new trial until November 1, 2016.[4]

¶22.    Although Herbert moved for and was granted additional time to file his motion for a new trial, this Court has held that "the circuit court does not have any discretion to extend time limits for filing a motion for a [judgment notwithstanding the verdict] or new trial." *Id*. at 455-56 (¶26).  Because Herbert's motion for a new trial was not timely filed, it should have been dismissed as untimely.  *See id*. at 456 (¶27).  Notwithstanding the procedural bar, we find this issue is without merit.

¶23.    "In reviewing the denial of a motion for a new trial 'based on an objection to the weight of the evidence,' this Court 'will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Kirk v. State*, 160 So. 3d 685, 697 (¶31) (Miss. 2015).  The evidence is weighed in the light most favorable to the verdict.  *Id*.  "A new trial should be granted on the basis of the weight of the evidence 'only in exceptional circumstances, when the evidence weighs heavily against the jury's verdict.'" *Hughes v. State*, 983 So. 2d 270, 277 (¶22) (Miss. 2008) (quoting *Wilson v. State*, 936 So. 2d 357, 363 (¶16) (Miss. 2006)).

---

[4] Herbert's sentencing judgment was entered July 29, 2016.  Thus, Herbert's motion for a new trial was filed well after both his judgment of conviction and sentencing judgment.

¶24. Herbert asserts that "Amy's allegations are uncorroborated" and "the circumstances surrounding the revelation of the allegations are suspect" because Amy's "identification [of him] was supplied by someone else." Yet, "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Lindsey v. State*, 212 So. 3d 44, 47 (¶14) (Miss. 2017). Amy's identification of Herbert was not "supplied" by Sue as Herbert claims. Instead, the record shows Amy told Sue who had molested her without having to say Herbert's name. Amy testified that the only people in the house at the time of the incident were her brother, who was asleep on the couch, her aunt, and Herbert. When asked how she knew it was Herbert and not her aunt who had touched her, Amy responded that her aunt "smells like smoke" but "does not have big hands." Amy's testimony regarding Herbert remained consistent and was not discredited or contradicted by other credible evidence.

¶25. Additionally, the record shows the jury heard all of the testimony and resolved any conflicts in the evidence. *See Williams v. State*, 64 So. 3d 1029, 1033 (¶13) (Miss. Ct. App. 2011) ("Conflicts in the evidence are for the jury to resolve."). "Any factual disputes [we]re properly resolved by the jury and do not mandate a new trial." *Sneed v. State*, 31 So. 3d 33, 43 (¶33) (Miss. Ct. App. 2009) (quoting *Moore v. State*, 859 So. 2d 379, 385 (¶26) (Miss. 2003)).

¶26. Having considered the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction

9

an unconscionable injustice. Accordingly, the circuit court did not err in denying Herbert's motion for a new trial.

III. *Whether the circuit court erred in refusing Herbert's circumstantial-evidence and two-theory jury instructions.*

¶27. According to Herbert, "the State presented no direct evidence." As a result, he last argues that the circuit court erred in refusing his circumstantial-evidence and two-theory jury instructions. This Court reviews the refusal of jury instructions for an abuse of discretion. *Thompson v. State*, 230 So. 3d 1044, 1052 (¶24) (Miss. Ct. App. 2017).

¶28. "A circumstantial-evidence instruction provides that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence." *McInnis v. State*, 61 So. 3d 872, 875 (¶11) (Miss. 2011). "A two-theory instruction provides that when a jury has considered facts and circumstances along with all other evidence, and every reasonable theory of innocence has been excluded, the jury must resolve the case in favor of the defendant." *Evans v. State*, 119 So. 3d 1084, 1086 (¶10) (Miss. Ct. App. 2013). "For the purposes of a two-theory instruction, a circumstantial[-]evidence case is one in which there is neither an eyewitness nor a confession to the crime." *Id.* at (¶11) (internal quotation mark omitted).

¶29. In *Evans*, Jane testified that she was awakened by Evans putting his finger in her vagina. *Id*. at 1085 (¶3). Once she became fully awake, Jane saw Evans walking out of the bedroom. *Id*. The circuit court noted "that direct evidence existed in the form of Jane testifying that Evans was the person who fondled her and that she saw him leaving her

bedroom immediately after she awakened to the fondling." *Id*. at 1086 (¶7). As a result, the circuit court held that the case was not a circumstantial-evidence case. *Id*. Evans appealed and argued that because it was a circumstantial-evidence case, he was entitled to a two-theory jury instruction. *Id*. at (¶9).

¶30. On appeal, this Court found that the circuit court did not abuse its discretion "in refusing a jury instruction reflecting that Evans's case was a circumstantial-evidence case." *Id*. at 1087 (¶14). Specifically, this Court noted:

> While Jane may not have seen Evans while he was fondling her, she awakened in a dark room to a finger in her vagina and instantaneously thereafter, saw Evans leaving her room. Evans was the only adult male in the bed. He was the only male in the apartment except for Jane's seven-year-old brother, John, and John testified that he was asleep during the entire incident.

*Id.* at (¶13).

¶31. Here, as in *Evans*, Amy testified that Herbert was the person who had touched her. Amy explained that the only adults in the house that night were Suzanne and Herbert. While Amy did not actually see Herbert, she testified that she knew it was Herbert who had touched her because he smelled like smoke and had big hands. Amy explained that she knew it was not her aunt who had touched her because, although her aunt smells like smoke, she does not have big hands. Moreover, as in *Evans*, Herbert was the only male in the house, other than Amy's younger brother, who was asleep during the incident.

¶32. Based on the evidence presented, we find the circuit court did not abuse its discretion in denying Herbert's circumstantial-evidence and two-theory jury instructions.

11

¶33. **AFFIRMED.**

**BARNES AND CARLTON, P.JJ., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**